## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 13 2018, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brycin E. Brooks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 13, 2018

Court of Appeals Case No.
48A05-1707-CR-1523

Appeal from the Madison Circuit
Court

The Honorable David A. Happe,
Judge

Trial Court Cause No.
48C04-1510-F2-1710

**Pyle, Judge.**

# Statement of the Case

Brycin E. Brooks ("Brooks") appeals his sentence, which the trial court imposed following his plea of guilty to Level 2 felony kidnapping.[1] On appeal, he argues that his sentence was inappropriate in light of the nature of his offense and his character. Because we do not find Brooks' sentence to be inappropriate, we affirm the trial court's decision.

We affirm.

# Issue

Whether Brooks' sentence was inappropriate.

# Facts

Around 1:00 or 2:00 a.m. on the morning of October 12, 2015, Thirea Brown ("Brown") was awoken by a "loud noise" at her front door. (Tr. Vol. 6 at 188). She telephoned her boyfriend, Dayquan Swain ("Swain"), and told him that it sounded like someone was trying to kick in the front door. Within two minutes, Brooks and his younger brother, Andrius Brooks ("Andrius"), broke into Brown's apartment wearing all black clothes and "Scream" masks. (Tr. Vol. 6 at 193). The brothers found Brown where she was hiding in her bedroom and pointed their guns at her while "yelling and asking [] where the stuff was." (Tr. Vol. 6 at 194). Brown told Brooks and Andrius that she did not

---

[1] IND. CODE § 35-42-3-2.

have anything, and one of the brothers started to ransack her apartment as the other held her at gunpoint. The brother holding her at gunpoint kept asking where "the stuff was" and clarified that he was looking for drugs and money. (Tr. Vol. 6 at 200). When Brown told him that she did not have any drugs or money, he did not believe her, and both brothers "kept telling [her] they [were] gonna kill [her]." (Tr. Vol. 6 at 201). At one point, one of the two brothers hit Brown on the left side of her face with his gun.

[4] After ransacking Brown's apartment, one of the brothers called Swain from Brown's phone and demanded $20,000. Brooks and Andrius then forced Brown to leave her apartment, get into their car, and lie down on the floor of the car. They then drove to another location and forced Brown to get into the trunk of the car. Throughout this time, the brothers continued to talk to Swain and demand that he give them money. They told Swain that they would kill Brown if he did not pay them. Brown could hear these conversations with Swain from the trunk of the car.

[5] Over the next twelve hours, Brooks and Andrius kept Brown locked in the trunk without feeding her or letting her out to use the restroom. During this time, their friend, Harold Jones ("Jones"), discovered that they had a woman captive when he heard her voice coming from the trunk. Also during this time, Brooks and Andrius continued to telephone Swain and tell him that they would kill Brown if he did not produce the money they had demanded. Eventually, however, Brooks and Andrius released Brown in a rural area of town, and police officers were able to pick her up.

[6]     On October 15, 2015, the State charged Brooks with Level 2 felony kidnapping, Level 2 felony burglary, Level 2 felony criminal confinement, and Level 3 felony attempted armed robbery. The State later amended the charging information to add counts of Level 3 felony confinement while armed with a deadly weapon and using a firearm in the commission of kidnapping and/or criminal confinement.

[7]     While Brooks was in jail, he wrote a letter to Jones, who had been charged with aiding them in kidnapping Brown. In the letter, Brooks wrote:

> [Jones,] is you gonna change the statement or what? You should have never said that shit anyway. I never expected that from you. That's gonna be a bad look going to the joint, a rat. You said more than the victim. That's crazy bro. Just let me know if you're gonna do it or not. If you are gonna do it, now [sic].

(Tr. Vol. 6 at 74).

[8]     On January 10, 2017, the trial court conducted a joint jury trial of Brooks and Andrius as co-defendants. At the conclusion of the trial, the jury was unable to reach a verdict, and the court declared a mistrial. Subsequently, the co-defendants appeared before the same trial court judge for another jury trial on April 24, 2017. Prior to jury selection that day, they both pled guilty to one Count of Level 2 felony kidnapping. In exchange for their guilty pleas, the State dismissed the remaining charges against them.

[9]     At Brooks' and Andrius' joint sentencing hearing, the State introduced a transcript of the ransom phone calls the brothers had made to Swain as

evidence. The State also introduced transcripts of the testimonies of several, but not all, of the witnesses from the January 10 jury trial as State's Exhibits 2-5. These exhibits provided the above facts regarding Brooks' offense. After the State offered the witness transcripts as exhibits, the State said: "My intent is to also ask that the court take judicial notice of the [January 10] trial in this case that previously ended in a mistrial." (Tr. Vol. 6 at 242). The trial court asked Brooks whether there was "any reason not to do so," and Brooks responded, "No objection." (Tr. Vol. 6 at 242). The trial court then said that it would take judicial notice "of the entire evidentiary record that's been developed in the case, including the exhibits . . . [and] the P.S.I." (Tr. Vol. 5 at 244).

[10] At the conclusion of the hearing, the trial court found as aggravating factors that: (1) Brooks had a significant criminal history; (2) the amount of time that Brooks held Brown was far beyond that necessary to constitute the elements of the offense; and (3) the offense was a complex multi-person conspiracy. The trial court identified as mitigating factors that: (1) Brooks had pled guilty and accepted responsibility, although it noted that he had not done so until the morning of the second trial; and (2) Brooks had demonstrated remorse. Based on these factors, the trial court sentenced Brooks to twenty-eight (28) years executed in the Department of Correction. Brooks now appeals.

# Decision

On appeal, Brooks argues that his sentence was inappropriate.[2] Under Indiana Appellate Rule 7(B), we may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review is "to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224.

When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. The sentencing range for a Level 2 felony is ten (10) to thirty (30) years with an advisory sentence of seventeen and one-half (17½) years. IND. CODE § 35-50-2-4.5. As Brooks was sentenced to twenty-eight (28) years, his sentence was two years less than the maximum sentence he could have received. Brooks argues

---

[2] Brooks' co-defendant, Andrius, also appealed his sentence. *Brooks v. State*, 48A02-1797-CR-1527 (Ind. Ct. App. Jan. 16, 2018).

that this sentence was inappropriate in light of the nature of his offense and his character. We disagree.

[13] The nature of Brooks' offense was particularly heinous. He, along with his brother, broke into Browns' apartment wearing all black and a "Scream" mask and held Brown at gunpoint. (Tr. Vol. 6 at 193). Brooks and Andrius then ransacked Brown's apartment and forced her into their car while they called her boyfriend and threatened to kill her if he did not produce $20,000. Over the next twelve hours, the two brothers kept Brown locked in their dark car trunk and did not let her out of the trunk to eat or use the restroom. During this time, they again threatened to kill her. Then, after Brooks was arrested for kidnapping Brown, he wrote a letter to Jones in which he told Jones to change his statement to police and said that Jones would be treated like a "rat" in jail for complying with the investigation into Brooks' offenses. (Tr. Vol. 6 at 74).

[14] As for Brooks' character, his PSI revealed that he has previous adult convictions for nine misdemeanor offenses and one felony, Level 6 felony battery with moderate bodily injury. In addition, he was adjudicated a delinquent as a juvenile for offenses that would have been considered Class D felony auto theft, Class D felony sexual battery, Class D felony intimidation, and Class C felony battery resulting in serious bodily injury if committed by an adult. Notably, Brooks has also violated his probation and placement on in-home detention in multiple causes. This criminal history demonstrates that Brooks has little respect for the law.

Based on this evidence of the nature of Brooks' offense and his character, we conclude that his sentence was not inappropriate.[3]

Affirmed.

Kirsch, J., and Bailey, J., concur.

---

[3] Brooks also argues that the trial court committed fundamental error when it took judicial notice of the entire record of the January 10 jury trial that ended in a mistrial. However, Brooks does not challenge State's Exhibits 2-5. Because those exhibits provided the evidence necessary to resolve Brooks' argument on appeal, we need not address his judicial notice argument.